**C.W. WISDOM and Elizabeth Lochen, Plaintiffs,**

v.

**J.W. NEAL and Neal and Neal, Defendants.**

**Civ. No. 81–483 HB.**

United States District Court,
D. New Mexico.

Sept. 15, 1982.

Stephen Durkovich, Albuquerque, N.M., for plaintiffs.

Shaffer, Butt, Thornton & Baehr, Raymond A. Baehr, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION

BRATTON, Chief Judge.

This matter comes before the court on cross motions for summary judgment. No material facts are in dispute and the case is ripe for disposition by summary judgment. The court has considered the authorities, the arguments of the parties and the entire record, and finds that plaintiffs' motion should be granted and defendants' motion denied.

Acting as attorneys for the estate of Hanna Kenmitz, the defendants determined that the estate should be distributed *per stirpes* to the decedent's four surviving nieces and nephews. The estate was adjudicated in formal testacy proceedings in New Mexico District Court, with the plaintiffs, brother and sister, each receiving one-sixth of the estate while their cousins received one-third each. Unfortunately, the New Mexico Probate Code provides that distribution should have been made on a *per capita* basis. §§ 45–2–103 and 45–2–106 N.M.Stat.Ann. (1978).

The time for appealing the Order of Distribution having run when plaintiffs discovered the error in distribution, plaintiffs unsuccessfully attempted to recover the improperly distributed property in proceedings in state court. *In Re Kemnitz,* 95 N.M. 513, 623 P.2d 1027 (Ct.App.1981). In the present action plaintiffs have abandoned the attempt to correct the Order of Distribution and seek only to recover damages for their loss from the attorneys responsible for the improper distribution. This, then, is a legal malpractice action to which defendants

raise two defenses: (1) res judicata/collateral estoppel and (2) the absence of an attorney-client relationship.

## RES JUDICATA/COLLATERAL ESTOPPEL

■ Defendants assert that the adjudication in the formal testacy proceedings is conclusive, therefore, the prosecution of this litigation is barred by either res judicata or collateral estoppel. Res judicata is clearly inapplicable; the causes of action in this suit and the testacy proceedings are not the same. Whether the doctrine of collateral estoppel requires dismissal is a more troublesome issue.

■ Although it is not in dispute, an essential element of plaintiffs' case is a showing that defendants were negligent. Defendants admit that they caused the estate to be improperly distributed, but they argue that since the distribution issue has already been litigated in a court with proper jurisdiction, where it was necessarily determined and finally decided, plaintiffs are now estopped from asserting the distribution was incorrect. The essence of collateral estoppel is that when a factual issue has been finally decided by a court of competent jurisdiction between the same parties or their privies, it may not be relitigated in a subsequent proceeding based on a different cause of action. 1B Moore's Federal Practice ¶ 0.441[2], p. 3777 (1982). The purpose of the doctrine is to preclude repeated controversy of matters that have been once judicially determined in order "to save individuals and courts from the waste and burden of relitigating old issues." 1B Moore's at p. 3779.

While collateral estoppel is a useful and necessary tool, it can be dangerously broad if mechanically applied.

> "Because the effect of collateral estoppel, unlike that of res judicata, is not limited to the cause of action asserted in the initial suit, but extends to other claims arising between the parties, unforeseeable and sometimes unjust results are possible, especially if the doctrine is applied without some degree of flexibility."

See also *Johnson v. United States,* 576 F.2d 606, 614 (5th Cir.1978) ("[T]he court must be satisfied . . . that application of the doctrine, under the circumstances, will not result in injustice to the party."); *Ransome v. Mimms,* 320 F.Supp. 1110 (D.S.C.1971); *Adams v. United Steel Workers of America, AFL–CIO,* N.M.S.B.B. Vol. 21, No. 11, p. 273 (Mar. 18, 1982) ("When all the elements of collateral estoppel are met, the doctrine may not be applied by a judge when the purposes for which it would be used would be fundamentally unfair and would not further the aims of the doctrine.")

■ Plaintiffs contend that collateral estoppel is inapplicable because defendants were not parties to the probate proceedings. Although the doctrine of mutuality has been renounced by many jurisdictions in recent years, New Mexico still firmly adheres to it. *Poorbaugh v. Mullen,* 96 N.M. 598, 601, 633 P.2d 706 (Ct.App.1981). Generally, when the first action was brought in state court and involved non-federal matters, federal courts follow the res judicata/collateral estoppel law of the forum state—a prior judgment is accorded no greater preclusive effect than under the law of the jurisdiction that rendered the judgment. *Kovacs v. Brewer,* 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958); *Rust v. First National Bank of Pinedale,* 466 F.Supp. 135 (D.Wy.1979); 1A Moore's at 3176–8. In *Brown v. DeLayo,* 498 F.2d 1173 (10th Cir.1974), however, the Tenth Circuit applied federal principles of collateral estoppel, which do not require strict mutuality so long as the litigant against whom the defense is asserted had a "full and fair opportunity for judicial resolution of the issue," to a prior state court judgment. Although it is not enunciated, it may be that the Court of Appeals was applying federal collateral estoppel principles because the claims in Brown's federal action were governed by federal substantive law. *Winters v. Lavine,* 574 F.2d 46, 55 (2d Cir.1978); 1A Moore's at 3177.

■ Even assuming that *Brown* requires this court to disregard New Mexico's mutuality requirement, collateral estoppel still

does not bar plaintiffs' recovery. The issue whether collateral estoppel bars an action for legal malpractice that occurred in a prior suit arises in an analogous manner when an attorney fails to timely file a notice of appeal and is sued by his client. The court hearing the malpractice action must necessarily rule on the propriety of the first court's final judgment in order to determine the merits of the dismissed appeal. This is uniformly allowed and is not considered a collateral attack on the first judgment. *Pete v. Henderson,* 124 Cal. App.2d 487, 269 P.2d 78 (Ct.App.1954); *Rodriguez v. Horton,* 95 N.M. 356, 622 P.2d 261 (Ct.App.1980); *Bryant v. Seagraves,* 270 Or. 16, 526 P.2d 1027 (1974).

Defendants cite *DiMauro v. Pavia,* 492 F.Supp. 1051 (D.Conn.1979) and *Krimsky v. Lombardi,* 78 Misc.2d 685, 357 N.Y.S.2d 671 (Sup.Ct.1974), *aff'd* 51 A.D.2d 600, 377 N.Y. S.2d 785 (1976) as supporting their position. The federal court in *DiMauro* followed the precedent set by the *Krimsky* case in dismissing DiMauro's claims of negligence by the law firm retained as counsel in administering her husband's estate. In *Krimsky,* though, the appellate court pointed out that the "plaintiffs were aware" of the defendant attorneys' alleged mismanagement of the estate "when the compromise settlement and agreement leading to the decree was achieved." The opposite situation exists here; plaintiffs were not aware at the time that the estate was being improperly distributed.

Furthermore, application of collateral estoppel under these circumstances would not further the purpose of that doctrine. Relitigation of issues once decided would not be prevented; neither the individuals involved nor this court would be spared any time or expense. The parties agree that the estate was improperly distributed so no litigation of this issue is necessary. The doctrine of collateral estoppel, therefore, does not require dismissal of plaintiffs' claim.

## ATTORNEY–CLIENT RELATIONSHIP

Defendants' second line of defense consists of the argument that because there was no attorney-client relationship between the parties, defendants owed plaintiffs no duty and cannot be held liable for their mistake. Plaintiffs concede that there was no attorney-client relationship, but contend that no such relationship is required in New Mexico to recover for legal malpractice. Both sides rely on *Holland v. Lawless,* 95 N.M. 490, 623 P.2d 1004 (Ct.App.1981).

The plaintiff in *Holland v. Lawless* had entered into an agreement for a lease with an option to buy with an administrator of an estate, through the estate's attorney, defendant Lawless. When Holland sought specific performance of the agreement, his petition was dismissed because neither the administrator nor the attorney had the authority to enter an agreement to sell the estate's property. Holland then sued Lawless for legal malpractice, negligence and misrepresentation.

Holland's legal malpractice claim was dismissed because there was no attorney-client relationship. The negligence claim was dismissed for the same reason, the court remarking that "there is no showing that Lawless owed plaintiff a duty . . . ." 95 N.M. at 495, 623 P.2d 1004. But the trial court's granting of summary judgment for Lawless on the negligent misrepresentation claim was reversed because New Mexico "no longer recognizes privity of contract as having a place in tort law." 95 N.M. at 496, 623 P.2d 1004, citing *Steinberg v. Coda Roberson Construction Co.,* 79 N.M. 123, 440 P.2d 798 (1968).

Without privity of contract, the State's courts have looked to other criteria for limitations on tort liability. In rejecting privity of contract, New Mexico's Supreme Court expressly referenced a California line of cases in which a multiple factor balancing test is used instead of privity of contract. The factors are,

"the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that he suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, and the policy of preventing future harm."

**8**

*Steinberg,* 79 N.M. 125, 440 P.2d 798. It is patently obvious that an evaluation of these factors dictates the conclusion that defendants here owed a duty to plaintiffs. This case is not materially distinguishable from those cases in which lawyers have been held liable to would-be beneficiaries for the negligent drafting of a will. *Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962).

At first glance, the rulings of the Court of Appeals on Holland's legal malpractice and negligence claims are perplexing in light of New Mexico's unconcern with privity of contract. As to the legal malpractice claim, however, Holland was apparently asserting that an attorney-client relationship existed. The Court of Appeals was merely affirming the lower court's grant of summary judgment on that factual issue when Holland failed to introduce any evidence of the relationship. The Court also affirmed dismissal of the negligence count on the ground that Lawless owed no duty to Holland and no attorney-client relationship existed. It is important to note that the Court did not preclude Holland from demonstrating that some basis for a duty existed other than the attorney-client relationship; it simply reiterated that the attorney-client relationship basis did not exist. Furthermore, because of his position as attorney for the estate, Lawless' duty as an attorney was to his client and not to the party with whom the estate was contracting. *Costello v. Wells Fargo Bank,* 258 Cal.App.2d 90, 65 Cal.Rptr. 612 (1968); *Chalpin v. Brennan,* 14 Ariz. 124, 559 P.2d 680 (Ct.App.1966).

■ The court is convinced that *Holland v. Lawless* does not require the dismissal of plaintiffs' claim for lack of an attorney-client relationship and that, on these facts, New Mexico law dictates that defendants owed plaintiffs a duty of due care. There being no dispute that defendants' failure to observe the statutory scheme of distribution is a breach of the standard of care required of an attorney, summary judgment will be granted for the plaintiffs as to the principal element of damages. To insure their just compensation, plaintiffs will be awarded interest at the statutory rate from the time of the erroneous distribution. *State Trust & Savings Bank v. Hermosa Land & Cattle Co.,* 30 N.M. 566, 596, 240 P. 469 (1925); *O'Meara v. Commercial Insurance Co.,* 71 N.M. 145, 151, 376 P.2d 486 (1962); N.M. Stat.Ann. § 56–8–3 (1978 & Supp.1980). An order in accordance with this opinion will be filed herewith.